SO ORDERED.

SIGNED this 12th day of September, 2014.



_Dale L. Somers_
Dale L. Somers
United States Bankruptcy Judge

_____

**Opinion Designated for Print and On-Line Publication**
**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| In Re: | |
| **BROOKE CORPORATION, et al.,** | **CASE NO. 08-22786** |
| DEBTORS. | **CHAPTER 7** |
| **CHRISTOPHER J. REDMOND,** **Chapter 7 Trustee of Brooke** **Corporation, Brooke Capital** **Corporation, and Brooke Investments,** **Inc.,** | |
| PLAINTIFF, | |
| v. | **ADV. NO. 10-6225** |
| **BROOKE HOLDINGS, INC., et al.,** | |
| DEFENDANTS. | |

**MEMORANDUM OPINION AND ORDER**
**DENYING THE TRUSTEE'S MOTION FOR SUMMARY JUDGMENT**
**AGAINST DEFENDANTS STEVEN AND WANDA SCHMIDT**

In this action, the Trustee seeks to avoid allegedly preferential transfers and constructively fraudulent conveyances made by Debtor Brooke Corporation (Brooke Corp) to Defendant Brooke Holdings, Inc. (BHI), and to recover part of those avoided transfers from Defendants Steven and Wanda Schmidt (the Schmidts)[1] under 11 U.S.C. § 550,[2] as subsequent transferees of BHI. The Trustee moved for summary judgment against BHI and the Schmidts.[3] BHI did not respond to the motion, and a default judgment was entered finding that $5,100,800 in loan payments Brooke Corp made to BHI are avoidable as preferential transfers under § 547(b) and that $13,143,980.77 in dividend payments Brooke Corp made to BHI after December 31, 2004, are avoidable as constructively fraudulent conveyances under §§ 544 and 548.[4] This opinion therefore addresses only the motion for summary judgment against the Schmidts.[5] For the reasons discussed below, the Court finds the Trustee is not entitled to judgment as a matter of law based upon the uncontroverted facts presented and therefore denies the motion as to the

---

[1] The Complaint also seeks recovery from other individuals, but the Trustee's actions against them have been dismissed.

[2] All subsequent references to title 11 in the text shall be to the section number only.

[3] Doc. 176.

[4] Doc. 215.

[5] This Court has jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and (b), and the Amended Standing Order of Reference of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective June 24, 2013. D. Kan. Standing Order 13-1, *printed in* D. Kan. Rules of Practice and Procedure at 168 (March 2014). Efforts to avoid or recover preferences and fraudulent conveyances are core proceedings which this Court may hear and determine as provided in 28 U.S.C. § 157(b)(2)(F) and (H). There is no objection to venue or jurisdiction over the parties.

Schmidts.

**UNCONTROVERTED FACTS.**

**Procedural History.**

Brooke Corp and Brooke Capital filed for bankruptcy on October 28, 2008. On October 6, 2010, the Trustee filed his Complaint against the defendants in this adversary action. The Complaint sought avoidance of preferential transfers under § 547 (Count I); avoidance of constructively fraudulent conveyances under § 548 and K.S.A. 33-204 and 33-205 (Count II); recovery of avoided transfers under § 550 (Count III); and disallowance of several proofs of claim under § 502(d) (Count IV). Initially, there were 13 defendants. Of these, eight have been dismissed with prejudice, and the claims against two more were terminated. This leaves BHI and the Schmidts, the parties against whom the Trustee moved for summary judgment. Defendant BHI failed to respond to the motion for summary judgment, and the order granting the Trustee a default judgment was entered on July 10, 2014.

The pretrial order set deadlines for discovery, including the production of reports from expert witnesses. The Trustee retained experts and provided three reports: Expert Report of R. Larry Johnson Regarding Insolvency of Brooke Corporation; Expert Report of R. Larry Johnson Regarding Insolvency of Brooke Holdings, Inc.; and Expert Report of Kent E. Barrett Regarding Brooke Holdings, Inc. Cash Flows (BHI Cash Flow Report). The Schmidts did not serve any expert reports and did not request any documents relied upon by the Trustee's experts. Discovery closed on April 3, 2014. April 21, 2014, was set

3

as the deadline for filing dispositive motions.

**Relationship of Defendants.**

Defendant BHI was incorporated in the State of Kansas as a privately-owned company used primarily to hold stock of Brooke Corp.[6]  BHI is an insider of the Debtors. Approximately 74% of BHI was owned by Robert Orr, 22% by his brother, Leland Orr, and 4% by other Orr family members.[7]  Robert Orr always held himself out as the person in charge of BHI.  Robert Orr also served as the CEO of Brooke Corp from 1986 through October 1, 2007.  Robert Orr served as the Chairman of Brooke Corp's Board of Directors from 1991 through September 17, 2008, and resigned from that Board in October 2008.  In 2007 and 2008, Robert Orr held various officer positions with Brooke Capital.  Defendant Wanda R. Schmidt is Robert Orr's mother-in-law.  Defendant Steven Schmidt is Wanda Schmidt's son and the brother-in-law of Robert Orr.

**Brooke Corp Loan Repayments and Dividend Payments to BHI.**

In May 2007, BHI began borrowing from First United Bank of Frankfort, Illinois, and loaning the proceeds to Brooke Corp.  From December 18, 2007, through July 16, 2008, BHI loaned Brooke Corp a total of $6.1 million.  Brooke Corp repaid BHI a total of

---

[6] Doc. 176-4 at 4.

[7] Doc. 176-1 at 6, ¶ 10 (supported by BHI Cash Flow Report, Doc. 176-6 at 3, which relied on SEC complaint filed May 4, 2011, in District of Kansas).  The Schmidts controverted this statement by referring to a 1992 document which shows Robert Orr's ownership to be approximately 39%.  The Court finds that the Schmidts' have not effectively controverted the Trustee's statement of fact, since the date of the Schmidts' document is almost 19 years before the SEC complaint was filed, and fifteen years before the events at issue in this proceeding took place.  Further, the exact percentages of ownership are not material to the issues before the Court.

4

$5,100,800 between February 14, 2008, and September 4, 2008.

From November 24, 2004, to the date that Brooke Corp filed for bankruptcy relief, Brooke Corp paid dividends to BHI totaling $13,737,194. In this proceeding, BHI has not contended that the dividends were paid on account of any antecedent debt.

**BHI Transfers to the Schmidts.**

Wanda Schmidt received two checks from BHI: one for $87,168.50, dated December 26, 2007, and one for $75,300, dated December 31, 2007. Of this $162,468.50 paid to Wanda Schmidt, $75,300 was for the redemption of her BHI common stock, and the remainder was for the redemption of her BHI preferred stock. The two checks did not clear the BHI bank account until February 26, 2008. Steven Schmidt received two checks from BHI: one for $180,000, dated December 31, 2007, and one for $180,000, dated February 22, 2008. This $360,000 paid to Steven Schmidt was for the repurchase of his BHI stock. Steven Schmidt deposited both checks into his bank account on February 22, 2008, and they cleared BHI's bank account on February 25, 2008. The Schmidts do not controvert the conclusions of the BHI Cash Flow Report that of the $162,468.50 paid by BHI to Wanda Schmidt, $115,840 (71.3%) came from Brooke Corp dividends, and that of the $360,000 paid by BHI to Steven Schmidt, $252,000 (70%) came from Brooke Corp dividends.

**Avoidance of Transfers from Brooke to BHI.**

On July 10, 2014, an Order Granting Trustee's Motion for Default Judgment

5

Against Defendant Brooke Holdings, Inc. was entered.[8]  The judgment holds:

(1) $5,100,800 in loan payments that Brooke Corp made to BHI are avoidable as

preferential transfers under § 547(b); (2) $13,143,980.77 in dividend payments that

Brooke Corp made to BHI are avoidable as constructively fraudulent conveyances under

§ 544 of the Bankruptcy Code (through K.S.A. 33-204(a)(2) and 33-205(a)) and

§ 548(a)(1)(B); and (3) pursuant to § 550 and K.S.A. 33-207, the Trustee may recover the

$5,100,800 and $13,143,980.77 in avoidable transfers from BHI.

## DISCUSSION

**The Schmidts Have Not Effectively Controverted the Trustee's Statement of Facts Regarding the Insolvency of Brooke Corp and BHI (Paragraphs 16-20).**

The Trustee's memorandum in support of his motion includes the following

statements regarding the insolvency of Brooke Corp and BHI.  The statements are

supported by reference to expert reports, copies of which are attached to the memorandum.

> 16.  Brooke Corp's assets consisted primarily of its investments in its operating subsidiaries, approximately 80-90% of which was its investments in Brooke Capital and Aleritas.  Brooke Capital was continuously insolvent from November 1, 2004 through the Petition Date. . . .

> 17.  After establishing liabilities for loan impairments and writing off intangible assets, Aleritas had substantial negative equity and was continuously insolvent since at least December 31, 2004.

> 18.  Given the insolvency of Aleritas and Brooke Capital, coupled with Brooke Corp's numerous unrecorded

---

[8] Doc. 215.

6

liabilities, Brooke Corp was insolvent since at least December 31, 2004.

      19.  Defendant BHI's solvency was dependent on the value of its investment in Brooke Corp common stock, since its other assets and liabilities consisted primarily of amounts borrowed from third parties to fund loans to Brooke Corp and other related parties.

      20.  As noted above, Brooke Corp was insolvent since at least December 31, 2004.  Thus, after eliminating the value of BHI's investment in Brooke Corp stock and amounts receivable from Brooke Corp due to Brooke Corp's insolvency, BHI had substantial negative equity.  Accordingly, BHI was also insolvent since at least December 31, 2004.[9]

When responding to the Trustee's motion, the Schmidts state:

      4. ¶s 16-18 are contested.  The Schmidts have no information as to Brooke Corp's solvency at any given time.  They also have no information as to the methodology employed by the trustee's expert.  The report, as attached to the summary judgment motion, is for the most part no more than conclusions.  The report also contradicts the market, as Brooke Corp. was a publicly traded company during the applicable time period with a positive per share price.  Moreover, given the amount involved in this adversary action, as to the Schmidts, they simply cannot afford to independently hire their own experts.  However, they understand that there are other actions pending in which Brooke Corp.'s solvency is at issue and will be/are contested with countering experts.  See Argument, Part 1, below.  Also, the Claimholder's Response includes significant materials contesting the trustee's experts as to insolvency.

      5. ¶s 19-20 are contested.  Again, the premise for these ¶s is that BHI was insolvent because Brooke Corp. was

---

[9] Doc. 176-1 at 7-8.

Case 10-06225   Doc# 230   Filed 09/12/14   Page 7 of 19

insolvent.  See Response to ¶s 16-18 above.[10]

The Schmidts' response to ¶¶ 16-20 of the Trustee's statement of facts is not sufficient to show a genuine dispute as to the facts stated.  Rule 56(c)(1) provides that a party asserting that a fact is "genuinely disputed must support the assertion by:  (A) citing to particular parts of materials in the record."  A local rule applicable to proceedings before this Court states, "All facts on which a motion or opposition is based must be presented by affidavit, declaration under penalty of perjury, and/or relevant portions of pleadings, depositions, answers to interrogatories, and responses to requests for admissions."[11]  The Schmidts cite no particular portions of the record in support of their assertions.  The Schmidts' refer to the "Claimholder's Response," but that response has been stricken from the record.[12]  Rather than providing facts which would be admissible in evidence to controvert the Trustee's statements, the Schmidts state they "have no information as to Brooke Corp's solvency at any given time."[13]

The matters stated in the Trustee's ¶¶ 16-20 will be considered uncontroverted for purposes of the motion for summary judgment.  As noted by the Trustee, these facts have reduced relevancy since BHI failed to respond to the motion for summary judgment and a

---

[10] Doc. 189 at 2.

[11] D. Kan. Rule 56.1(d).

[12] The Claimholder's Response is Doc. 186.  It is a response to the Trustee's motion for summary judgment that was filed by a nonparty, Robert D. Orr, who purchased BHI's claim against Brooke Corp.  The response was stricken from the record by Doc. 208.

[13] Doc. 189 at 2.

Case 10-06225    Doc# 230    Filed 09/12/14    Page 8 of 19

default judgment avoiding the challenged transfers to it has been entered.  The insolvency of neither Brooke Corp nor BHI is an element of the Trustee's claims against the Schmidts.  Nevertheless, BHI's insolvency is not totally irrelevant, as it is a factor in the Trustee's argument that the Schmidts did not give value for the funds in issue.

**The Court Will Not Delay Ruling on the Summary Judgment Motion Based on the Schmidts' Assertion that Facts to Controvert Paragraphs 16-20 of the Trustee's Statement of Facts Are Unavailable to Them.**

The Schmidts argue that their inability to controvert the Trustee's statement of facts regarding the solvency of Brooke Corp and BHI provides grounds to delay ruling on the motion under Rule 56(d), which provides:

> **(d)  When Facts are Unavailable to the Nonmovant.**
> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery; or
> (3) issue any other appropriate order.

The rule was amended in 2010 and subdivision (d) "carrie[d] forward without substantial change the provisions of former subdivision (f),"[14] so earlier authorities referring to subdivision (f) now apply to subdivision (d).  "The purpose of subdivision (f) is to provide an additional safeguard against improvident or premature grant of summary judgment."[15] "One of the most common reasons offered under Rule 56(f) for being unable to present

---

[14] Fed. R. Civ. P. 56, Advisory Committee Notes to 2010 Amendments.

[15] 10B Charles Alan Wright, Arthur R. Miller & Mary Jane Kane, *Federal Practice and Procedure*, § 2740 at 402 (3rd ed. 1998).

specific facts in opposition to a summary-judgment motion is insufficient time or opportunity to engage in discovery."[16]  In the Tenth Circuit, "a party seeking to defer a ruling on summary judgment under Rule 56(f) must provide an affidavit 'explain[ing] why facts precluding summary judgment cannot be presented.'"[17]  The affidavit should identify "(1) 'the probable facts not available,' (2) why those facts cannot be presented currently, (3) 'what steps have been taken to obtain these facts,' and (4) 'how additional time will enable [the party] to' obtain those facts and rebut the motion for summary judgment."[18]  Justifications for not taking discovery based on a lack of funds have not been successful.[19]

In this case, discovery has been closed.  The Schmidts have not designated any experts or conducted any discovery to determine the details of the expert opinions offered by the Trustee.  The Schmidts describe no steps which they have taken to refute the allegations of insolvency and do not explain how additional time will enable them to obtain the needed facts.  The declaration submitted to support the Rule 56(d) defense states merely that neither the declarant, Steven Schmidt, nor his mother, Wanda Schmidt, can afford to pay significantly more to defend against the Trustee's Complaint, and that the fees of a forensic accountant would be substantial and beyond their ability to pay.  The

---

[16] *Id.*, § 2741 at 412.

[17] *Valley Forge Ins. Co. v. Health Care Mgmt. Partners, Ltd.*, 616 F.3d 1086, 1096 (10th Cir. 2010) (*quoting Comm. for the First Amendment v. Campbell*, 962 F.2d 1517, 1522 (10th Cir. 1992)).

[18] *Id.*

[19]  10B *Fed. Prac. & Pro.*, § 2741 at 436 (*citing Grimm v. Westinghouse Elec. Corp.*, 300 F. Supp. 984, 991 (N.D. Cal. 1969); *Dale Hilton, Inc., v. Triangle Publ'ns, Inc.*, 27 F.R.D. 468, 476 (S.D.N.Y. 1961)).

10

Schmidts ask for a delay in ruling on the summary judgment motion not for the purpose of conducting their own discovery, but because there are other adversary proceedings "where the Brooke Corp. insolvency will be contested with the assistance of expert testimony."[20]

For several reasons, the Court rejects the Schmidts' argument as a basis for delaying a ruling on the summary judgment motion. First, the Schmidts recite no efforts on their part to join with the defendants in the cited cases in the retention of experts. Second, it is highly possible that the other proceedings will be settled and not proceed to trial. Third, because judgment has been entered on the avoidance claims against BHI, the insolvency of Brooke Corp and BHI are not elements of the remaining claims. Fourth, the Schmidts have made no argument that a ruling on the solvency of Brooke Corp in the other cases would have a preclusive effect in this case.

The Court declines to delay resolution of the Trustee's summary judgment motion until after a determination is made in other adversary proceedings of Brooke Corp's solvency.

**The Trustee's Summary Judgment Motion Is Denied.**

Section 550(a)(1) allows the Trustee to recover for the benefit of the estate any transfer which is avoidable under §§ 544, 547, and 548 from the initial transferee. Judgment was entered under this subsection against BHI as the initial transferee of the Brooke Corp loan repayments of $5,100,800 and dividend payments of $13,143,980.77.

---

[20] Doc. 189 at 5.

11

But that judgment has not been satisfied, and the Trustee has no expectation of recovering from BHI. The Trustee therefore seeks a judgment against the Schmidts under § 550(a)(2), which allows the Trustee to recover the avoided transfers from "any immediate or mediate transferee of such initial transferee."

The uncontroverted facts establish that in February 2008, BHI transferred $360,000 to Steven Schmidt and $162,468.50 to Wanda Schmidt in order to redeem their stock in BHI. Of the monies paid to Steven Schmidt, $252,000 is traceable to the avoidable transfers that BHI received from Brooke Corp. Of the monies paid to Wanda Schmidt, $115,840 is traceable to the avoided transfers that BHI received from Brooke Corp. As to the traceable funds, the Schmidts are transferees of BHI, the initial transferee from Brooke Corp. They are therefore liable to the Trustee under § 550(a)(2), unless they are within the protection afforded by § 550(b). That subsection provides:

> (b) The Trustee may not recover under section (a)(2) of this section from —
> (1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or
> (2) any immediate or mediate good faith transferee of such transfer.

"The policy underlying the 'good faith' defense . . . is to protect certain innocent purchasers from challenges to the underlying transfer."[21] The focus is on the transaction

---

[21] *Enron Corp. v. Avenue Special Situations Fund II, LP, (In re Enron)*, 333 B.R. 205, 233 (Bankr. S.D.N.Y. 2005); *see also Bonded Financial Servs., Inc., v. European Amer. Bank*, 838 F.2d 890, 897 (7th Cir. 1988) (Transferees covered by § 550(b) receive protection because requiring them to

Case 10-06225   Doc# 230   Filed 09/12/14   Page 12 of 19

between the initial and the subsequent transferee.[22]  The subsection provides an affirmative

defense, and the transferee relying on the defense has the burden of proof.[23]

The Trustee asserts that the Schmidts are not protected by § 550(b)(1) for two

reasons:  (1) they did not allege the defense in their answer; and (2) they did not give value

for the transfers from BHI.  When the Trustee raised the first of these objections in his

memorandum in support of summary judgment, the Schmidts responded with a motion to

amend their answer to add the defense, to which the Trustee objected.  By separate order,

the Court has allowed the Schmidts to amend their answer.  The Trustee's first assertion is

therefore rejected.

The Trustee's second assertion presents a difficult legal question — does the fact

that BHI was insolvent when the transfers were made to the Schmidts in exchange for their

stock in BHI establish as a matter of law that the Schmidts did not give value for the

transfers?  Courts disagree about the meaning of "value" as used in § 550(b)(1).  Some

courts hold that "value" is consideration sufficient to support a contract[24] — that there is

no requirement for the value of the property received from the earlier transferee to be

---

monitor how their transferors obtained the property transferred would be impractical, and exposing them to risk on account of earlier problems affecting the property would make commerce harder to conduct.).

[22] *Bonded Financial*, 838 F.2d at 897; *Lewis v. Zermano (In re Stevinson)*, 194 B.R. 509, 512-13, D. Colo. 1996); *Bakst v. Sawran (In re Sawran)*, 359 B.R. 348, 354-55 (Bankr. S.D. Fla. 2007).

[23] *Rodgers v. Monaghan Co. (In re Laguna Beach Motors, Inc.)*, 159 B.R. 562, 566 (Bankr. C.D. Cal. 1993).

[24] *In re Enron*, 333 B.R. at 236; *Baldi v. Lynch (In re McCook Metals, L.L.C.)*, 319 B.R. 570, 590 n. 15 (Bankr. N.D. Ill. 2005).

Case 10-06225    Doc# 230    Filed 09/12/14    Page 13 of 19

reasonably equivalent to the value of the property given by the subsequent transferee.[25]

Other courts find that "value" requires a measure of equivalence, such as fair market value

or reasonably equivalent value.[26]  The Schmidts argue the Court should adopt the first

view, and the Trustee urges the adoption of the second view.

The Court finds those cases not requiring a measure of equivalence are better

reasoned.  Section 550(b) contains no equivalence language; it requires only "value."  If

Congress intended to require equivalence, one would expect it to have said so, as it did in

other Code sections.  As stated by one court,

> [The omission of equivalence language in § 550(b)(1)] is
> significant because Congress knows how to impose an
> equivalence standard when it wants to.  Section 549(c) of the
> Code, for example, requires a transferee to have paid "present
> fair equivalent value" to sustain a defense to an action to
> recover a post-petition transfer.  Similarly, section
> 548(a)(1)(B) renders fraudulent certain transfers received for
> "less than a reasonably equivalent value."  When Congress
> uses language in one part of a statute and omits it in another,
> the omission is presumed to be intentional.[27]

This analysis is supported by the legislative history.  The 1973 Report of the Commission

on the Bankruptcy Laws of the United States explained the proposal which became

---

[25] *Anderson v. SunTrust Mortgage, Inc. (In re Judd)*, 471 B.R. 830, 847 (D.S.C. 2012); *CLC Creditors' Grantor Trust v. Howard Savings Bank (In re Commercial Loan Corp.)*, 396 B.R. 730, 743-44 (Bankr. N.D. Ill. 2008); *Williams v. Mortillaro (In re Resource, Recycling & Remediation, Inc.)*, 314 B.R. 62, 70 (Bankr. W.D. Pa. 2004); *Coleman v. Home Savings Ass'n (In re Coleman)*, 21 B.R. 832, 836 (Bankr. S.D. Tex. 1982).

[26] *Brown v. Harris (In re Auxano, Inc.),* 96 B.R. 957, 965 (Bankr. W.D. Mo. 1989) (fair market value); *In re Laguna Beach Motors*, 159 B.R. at 568 (reasonably equivalent value).

[27] *In re Commercial Loan Corp.*, 396 B.R. at 744.

14

§ 550(b) in part as follows: "Subdivision (b) states the liability, if any, of subsequent transferees. If the subsequent transferee gives value in good faith, regardless of the amount or whether present or past consideration, he is protected."[28] The cases relied upon by the Trustee that interpret "value" to mean "fair market value" or "reasonably equivalent value" are contrary to the legislative intent.

The absence of an equivalence standard is also supported by the purpose of § 550(b).[29] It provides a defense similar to one available to purchasers of goods. Under Article 2 of the Uniform Commercial Code, "a person with voidable title has power to transfer a good title to a good faith purchaser for value."[30] The definition of "value" includes "any consideration sufficient to support a simple contract";[31] there is no equivalence requirement. Under Kansas law, a similar rule also applies to certain real property transactions: in order for a grantee under a quitclaim deed to take advantage of the recording laws and be considered a good faith purchaser for value, the consideration

---

[28] Report of the Commission on the Bankruptcy Laws of the United States, H.R. Doc. No. 93-137, 93rd Cong. 1st Sess., Part II, Proposed Statutory Changes, § 4-609, n. 4 (1973), *reprinted in* App., Vol. B, *Collier on Bankruptcy*, App. Pt 4(c) at p. App. Pt. 4-753.

[29] The case relied upon by the Trustee for the proposition that "value" in § 550(b)(1) means "fair market value" does so based upon the rationale that the purpose of § 550 is to preserve the assets of the estate. *In re Auxano, Inc.*, 96 B.R. at 965. But in this Court's opinion, that rationale is misdirected. Although the purpose of § 550 in general is preserving assets of the estate, the purpose of § 550(b)(1), which imposes the requirement of "value," is to provide protection to subsequent transferees of avoided transfers. That protective purpose is fulfilled by construing "value" in subsection (b)(1) not to impose an equivalence standard.

[30] K.S.A. 84-2-403(1).

[31] K.S.A. 2013 Supp. 84-1-204(4).

15

paid must have been valuable (not nominal), but it need not have been full or adequate.[32] Furthermore, the Restatement (Third) of Restitution and Unjust Enrichment, which has been followed by the Kansas appellate courts,[33] recognizes being a purchaser for value without notice as an affirmative defense to liability on restitution claims against the property that would have been valid if the property had remained in the hands of the grantor.[34] When defining "value," the Restatement says, in part: "Except as otherwise provided by statue, a purchaser gives value for rights if they are acquired (a) in exchange for present value, excluding nominal consideration."[35]

The Trustee contends that because BHI was insolvent when the Schmidts received the funds from BHI that are traceable to the avoided transfers from Brooke Corp to BHI, summary judgment should be granted in his favor. The Schmidts respond by asserting that stock of even an insolvent company may have value. They cite *Commercial Loan*[36] in support. In that case, four banks were stockholders of the debtor, Commercial Loan Corporation (CLC), which was controlled by Hueser. Starting in 2001, Hueser began purchasing all of the stock of CLC from the banks using CLC funds that had been transferred to WK Financial, a corporation controlled by Hueser. CLC filed for Chapter

---

[32] *Morris v. Wicks*, 81 Kan. 790, 791-94, 106 P.1048 (1910) (consideration of $1 was nominal).

[33] *Uhlmann v. Richardson*, 48 Kan. App.2d 1, 7-12, 287 P.3d 287 (2012).

[34] Restatement (Third) of Restitution and Unjust Enrichment, § 66 (2011).

[35] *Id*., § 68.

[36] *In re Commercial Loan Corp.*, 396 B.R. 730.

16

11 bankruptcy relief in 2004, and a liquidating plan proposed by creditors was confirmed. A liquidating trust created by the plan sued to recover the funds used to purchase the stock from the banks. The banks moved for summary judgment. As to the value element of the banks' good-faith-transferee defense under § 550(b)(1), the court held that "value" did not include any equivalence element and that the stock purchased by Hueser had value even though CLC was insolvent. The court stated:

> The stock was "value" because it constituted consideration sufficient to support a simple contract. The Trust argues that the stock had no value because CLC was insolvent at the time of the sales, but stock in a corporation may have value even though the corporation is insolvent (in the "balance sheet" sense that its liabilities exceed its assets). The banks established a prima facie case on the "value" element by showing they gave up their stock. If CLC's insolvency meant the stock had no value, it was the Trust's obligation to adduce evidence showing as much. No evidence has been offered.[37]

The *Commercial Loan* court therefore found for the transferees on the value issue because of the trust's failure to provide evidence other than the fact of CLC's insolvency.

The question in this case is whether "value" was given when the Schmidts surrendered their BHI stock for redemption even though it has now been established that BHI was insolvent at the time of the redemption. The Court finds *Commercial Loan* to be instructive and rejects the Trustee's argument that the statement in *Commercial Loan* that the stock of an insolvent entity may have value is not good law. It is true, as argued by the

---

[37] *Id.* at 743-44.

Case 10-06225    Doc# 230    Filed 09/12/14    Page 17 of 19

Trustee, that *Commercial Loan* relied upon *Wabash Valley Power*,[38] a 1995 Seventh

Circuit decision which that circuit recently noted has been abrogated in part by subsequent

Supreme Court decisions.[39] But *Wabash Valley* addressed the value of the stock of an

insolvent corporation for purposes of the absolute priority rule, not § 550(b)(1). The Court

finds the general proposition that it is possible for the stock of an insolvent corporation to

have value for purposes of § 550(b)(1) to be reasonable. Nothing in § 550 requires the

adoption of a balance-sheet test for the value of stock transferred to the issuer for

redemption. For example, such stock could have value because of control issues or

because solvency is on the horizon.

The Court also finds the rationale of the bona-fide-payee defense of the

Restatement (Third) of Restitution and Unjust Enrichment to be helpful. It defines the

innocent-cash-payee defense by providing, in part, that "[a] payee without notice takes

payment free of a restitution claim to which it would otherwise be subject, but only to the

extent that (a) the payee accepts the funds in satisfaction or reduction of the payee's valid

claim as creditor of the payor or of another person."[40] Under this definition, the defense is

not available to the recipient of a gift or a payment on an illegal contract, such as a

---

[38] *In re Wabash Valley Power Assoc.*, 72 F.3d 1305, 1318 (7th Cir. 1995).

[39] *In re Castleton Plaza, LP*, 707 F.3d 821, 823-24 (7th Cir. 2013) (*Wabash Valley* abrogated to extent it suggested that despite absolute priority rule, equity owners of Chapter 11 debtor could retain their interests by contributing new value to debtor pursuant to reorganization plan without engaging in competitive bidding for those interests).

[40] Restatement (Third) of Restitution and Unjust Enrichment, § 67.

gambling obligation, because they are not valid claims against the payor.[41]  The Trustee

has not presented facts or argument showing that the redemption of the Schmidts' stock in

BHI was either a gift or an illegal contract.

In this case, as in *Commercial Loan*, the Trustee has proven that BHI was insolvent,

not that the Schmidts gave no value for the transfers.  The Trustee may ultimately prove

that the Schmidts gave no value, but at the summary judgment phase of this litigation, the

Court is unwilling to conclude that the Schmidts cannot prevail on the good-faith-

transferee defense premised <u>solely</u> on the fact of BHI's insolvency.  Although this fact will

undoubtedly make it more difficult for the Schmidts to prove the stock had value at the

time their stock was redeemed, it does not conclusively establish that the stock had no

value at that time.

**CONCLUSION.**

For the foregoing reasons, the Court denies the Trustee's motion for summary

judgment against Defendants Steven and Wanda Schmidt.

**IT IS SO ORDERED.**

# # #

---

[41] *Id.*, Illustrations 2 & 11.

Case 10-06225    Doc# 230    Filed 09/12/14    Page 19 of 19